#2706962

UNITED STATES DISTRCT COURT
FOR THE
NORTHERN DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | PRESENTENCING REPORT AND |
| vs. | ) | MITIGATING FACTORS |
| | ) | |
| ARCHIE STALLWORTH | ) | Docket No. 08 CR 948 |
| | ) | |

Prepared For:  The Honorable John F. Grady
               United States District Court Judge

Prepared By:   Attorney Benjamin E. Starks
               Law Firm of Starks & Boyd, P.C.
               11528 S. Halsted Street
               Chicago, IL 60628
               (773) 995-7900

**Assistant U.S. Attorney**                    **United States Probation Office**
David Weisman                                   Troy V. Grooms
219 South Dearborn Street                       55 E. Monroe
U.S. Courthouse – 5th Floor                     Suite 1500
Chicago, IL 60604                               Chicago, IL 60603
(312) 353-2119                                  (312) 435-5750

**Sentencing Date:**    February 17, 2010 at 1:00 p.m.

**Offense:**    Count One**:**  Attempt to Possess with Intent to Distribute a Controlled
                                Substance (21 U.S.C. §846).

                Count Two:      Deconstruction, Alteration, or Falsification of Records in Federal
                                Investigation (18 U.S.C. §1519).

NOW COMES the Defendant, Archie Stallworth, by and through his attorney, Benjamin E. Starks of the Law Firm of Starks & Boyd, P.C., respectfully requests, consistent with the sentencing principals set forth in **18 U.S.C.§ (a) and <u>United States v. Booker</u>, 543 U.S. 220 (2005)**, that this Court impose a sentence at the lower end of the recommended guidelines, to wit; offense level 26, Category I, 63 to 78 months. In support of the request, Mr. Stallworth offers the following:

### SENTENCING STANDARD

"Post-<u>Booker</u>, a district court has significantly more freedom than before <u>Booker</u> to fashion an appropriate sentence." **United States v. Booker, 445 F.3d 987 (7th Cir. 2006)**. Under Booker, the United States Sentencing Guidelines are merely "advisory", and sentencing courts are required to consider all of the factors listed in **18 U.S.C. §3553(a)** in imposing sentence. <u>Booker</u>, 543 U.S. 220, 259-60 (2005).

As the Supreme Court has explained in Rita and Gall, a district court should begin all sentencing proceedings by correctly calculating the applicable Guidelines range. <u>Rita v. United States</u>, 127 S. CT. 2456 at 2480 (2007); <u>Gall v. United States</u>, 552 U.S. 38 (2007). The Guidelines are not, however, the only consideration. <u>Gall</u>, 552 U.S. 38 (2007). After giving both parties an opportunity to argue for whatever sentence they deem appropriate, the district judge should then consider all of the 18 U.S.C. §3553(a) factors to determine whether they support the sentence requested by a party. <u>Id</u>.

**The primary directive in §3553(a) is that the Court must impose a sentence that is "sufficient,** *but not greater than necessary***, to comply with" the purposes of sentencing. Sec. 18 U.S.C. §3553(S) (emphasis added).**

- to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment;
- to create adequate deterrence;
- to protect the public from future crimes of the defendant; and
- to provide the defendant with necessary treatment and training. §3553(a) (2).

Section 3553(s) directs sentencing courts to consider a number of additional factors as well, including:

As Booker emphasized, under the Sentencing Reform Act, "No limitation shall be placed on the information concerning the background, character, and conduct of a person convicted or an offense which a court of the United States may receive and consider the purpose of imposing an appropriate sentence." Booker, 125 S.Ct. at 760 (quoting 18 U.S.C. §3661). Accordingly, this Court may consider factors which the Guidelines discourage, limit, or reject.

## DEFENDANT'S SENTECING CALCULATIONS

The defendant calculates the sentencing guidelines as follows:

**Count One**

The defendant was found guilty by a jury pursuant to U.S.S.G. §2D1.1(c)(4), that he attempted to possess at least 5 kilograms of cocaine but less than 15 kilograms of cocaine, the base offense level of 32.                                                                                          32

Pursuant to guideline §3B1.2(a), the offense level is decreased by -4 levels because the defendant was a minimal participant in the criminal activity.         - 4

Pursuant to guideline §2D1.1(b)(11), and §5C1.2, the defendant qualifies for the safety valve and the offense level should decrease by -2 levels.             - 2

**Adjusted Offense Level (Subtotal):**                                                                26

Multiple Count Adjustment (See §3D1.4)

The United States Commission Guideline for violations of 18 U.S.C. §1519 (Count Two) is found at §2J1.2. Application Note 3 of this guideline instructs that the obstruction offense and the underlying offense be grouped together pursuant to §3B1.2(c), and Application Note 8 of §3C1.1.

Counts One and Two are therefore grouped together, pursuant to §3D1.2(c), and the offense level for Count One as calculated pursuant to §2D1.1, which results in the higher offense level, is reflected below.

**Combined Adjusted Offense Level:**                                                                26

**Total Offense Level:**                                                                                         26

## CRIMINAL HISTORY

With regard to determining defendant's criminal history points and criminal history category, based on the facts now known to the government, defendant's criminal history points equal zero and defendant's criminal history category is I. Category of I, the guideline range for imprisonment is 63 to 78 months.

## ANTICIPATED ADVISORY SENTENCING GUIDELINES RANGE

Based on the facts now known to the government, the anticipated offense level is 26, which when combined with the anticipated criminal history category of I, results in an anticipated advisory Sentencing Guidelines range of 63 to 78 months imprisonment, in addition to any supervised release, fine and restitution the Court may impose.

Defendant and his attorney and the government acknowledge that the above Guideline calculations are preliminary in nature, and are non-binding predictions upon which neither party is entitled to rely.

### History and Characteristics

Archie Stallworth, Jr. was born on July 7, 1972, in Chicago, Illinois, to the union of Archie Stallworth and Belinda (Burks) Stallworth.  His father resides in Gary Indiana, and is a truck driver. His mother is not working and resides in Chicago, Illinois. He has one surviving sibling; Eric Stallworth, age 41, who resides in Chicago, Illinois.  Mr. Stallworth is married to Lakisha Bumphis, and from the union two (2) children were born: Arielle Stallworth, age nine (9); and Amaya Stallworth, age four (4).

Archie Stallworth has been a lifelong residence of Illinois, aside from attending college in Michigan between 1990 and 1991. He and his family reside at 165 East 150th Street, Harvey,

Illinois, which has served as their family residence for approximately four (4) years. Mr. Stallworth is described as a dedicated, award winning police officer, who often worked with the Mayor of Harvey.

Mr. Stallworth has been employed with various police departments through out the Chicago land area since 1994. His last job lead him to be a Police Officer in the City of Harvey, Illinois. Mr. Stallworth was Head of the Gangs and Narcotics Unit and took that job very seriously. To him and didn't think of it as just a regular 9 to 5 job.  Along with being a Police Officer with the City of Harvey, Mr. Stallworth has worked a full time job with Metra (NIRC) Railroad as a conductor since August 1996.

During his free time, Mr. Stallworth has dedicated much of his time and efforts in giving back to his community. He has participated in several initiatives in keeping the children of the community off the streets, as well as developed senior citizen programs at three (3) senior citizen buildings located in Harvey, namely; the YMCA Senior Building, the Community Center, and the Robey Senior Building. From his own founds he has purchased food and prizes and occasionally was reimburse by the city.

In efforts in giving back to the community, Mr. Stallworth also visited high schools in the City of Harvey, namely; Brooks Jr. High School, Thornton Township High School. He assisted students with getting summer jobs and provided mentorship to them.

### Defendant's Version of the Offense

I.     Introduction

On November 19, 2008, Archie Stallworth (defendant) was arrested pursuant to criminal complaint number 08 CR 948, which alleged the defendant possessed with intent to distribute a controlled substance, in violation of 21 U.S.C. § 846. On December 17, 2008, the defendant was named in a two-count indictment returned by a special September 2008 Grand Jury for the United States District Court, in the Northern district of Illinois. Count One charged that the defendant attempted to possess with intent to distribute a controlled substance, namely five kilograms or more of mixtures and substances containing a detectable amount of cocaine, a Schedule I Narcotic Drug Controlled Substance, in violation of 21 U.S.C. § 841 (a)(1); all in violation of 21 U.S.C. § 846 and 18 U.S.C. § 2.

Count Two charged the defendant, knowingly altered, falsified, or made a false entry in the record, document, or tangible object, namely, Harvey Police Reports under case number 4996B-08; with the intent to impede, obstruct, and influence the investigation and proper administration of a matter within the jurisdiction of a department or agency of the United States, namely, the Federal Bureau of Investigation, and in relation to and contemplation of such matter; in violation of 18 U.S.C. § 1519 and 2.

II. Defendant's Version of the Facts

A. Count One

Defendant first met Carlos at the Harvey Police Department on or about May 1, 2008. Carlos told the defendant that he was a manger of the Sky Box, an Adult Entertainment Club in Harvey, Illinois. Carlos' presence in the police station was regarding an incident that had happened in April 2008 at the Sky Box. Carlos then asked defendant Stallworth whether or not he would be interested in providing security for out of town guests. Defendant indicated to Carlos that he would be interested in providing security services.

On or about August 11, 2008, Carlos contacted the defendant and asked him to provide security for him and that he would fill him in on the details later. Upon arrival at Carlos' condo in Oak Lawn, Illinois, Carlos informed the defendant that they would be taking separate cars to DuPage Airport to provide security for a person that he would be meeting at the airport. The defendant was not on duty nor was he in a police vehicle. The defendant did not participate in any of the negotiations whatsoever regarding what was to be received by Carlos at the airport.

While at the airport, Carlos asked the defendant to accompany him into the airport. Carlos and the defendant went into the airport, where Carlos met F.B.I. Undercover Agent II, who was in possession of three (3) duffel bags. Carlos received the three (3) duffel bags and gave two of them to the defendant to carry to his vehicle. Upon reaching Carlos' vehicle with the bags, Carlos then told the defendant that, "this is the purest shit out here." The defendant replied, "I don't even want to see that shit." The bags were loaded into Carlos' vehicle and then transported to near by parking lot where F.B.I. Undercover Agent III received the duffel bags from Carlos' vehicle. The defendant was paid $1,000.00 for his alleged security services.

B. Count Two

Defendant Stallworth and Andre Sneed were partners and worked as detectives in the Harvey Police Department. They occasionally performed undercover activities for the

department. On or about Mid May 2008, Andre Sneed and Leonard Weathers, who was also a Harvey Police Detective, were asked to provide security by F.B. I. Agent Carlos for a large shipment of Narcotics in an unknown location in DuPage County. Detective Sneed and Weathers witnessed what they believed to be a drug transaction conducted by Carlos and another individual. Detective Sneed and Weathers were paid $500.00 each for their alleged security services. Detective Sneed on that same date, generated incident report # 4996B-08, and gave the same to Commander Mike Neal. The same was not officially filed until on or about November 19, 2008; after defendant Stallworth's arrest.

On or about July 26, 2008, the defendant while off duty and in his personal vehicle, provided security for the first time. He picked Carlos up at his condo in Oak Lawn, Illinois and drove him to a Denny's Restaurant in Palos Hills, and observed Carlos go in and out of a vehicle that was parked in the restaurant's parking lot. The defendant received $300.00 for providing alleged security on that day. Carlos then confided in the defendant that he was a broker, who provided secure locations for buyers and sellers of narcotics. The defendant then in an effort to learn more about Carlos' activities pretended to be interested.

Defendant Stallworth, after he allegedly provided security for Carlos on or about August 11, 2008, generated a supplemental Harvey Police Report which included his activity on July 26, 2008 and placed the same in Commander Mike Neal's mailbox located inside the Harvey Police Department. Commander Neal never signed off or filed the same. Commander Neal testified in court, in the instant case, that he never saw incident report # 4996B-08. The Government adduced no evidence that the defendant created an unauthorized, uncorroborated, post-dated police report. The $1,000.00 pre-marked U.S.C. that the defendant received from Carlos on August 11, 2008, was comingled with his personal monies and was subsequently put into a safe that he kept under his desk at the Harvey Police Station. The safe and the content thereof was subsequently confiscated and utilized as evidence in the case at bar.

### The Need For the Sentence Imposed To Satisfy the Purpose of Sentencing and the Types of Sentences Available

The requested downward departure by the defendant would be a sentence that is sufficient, but **not greater than necessary**, given the various purposes of sentencing this Court must consider in Mr. Stallworth's case. **Section 3553(a)(2) reflects the general sentencing**

**purposes of imprisonment** (see, c.g., 18 U.S.C.§3553(a)(2)(A)), deterrence (both general and specific) (see 18 U.S.C. §3553(a)(2)(B) & (C)). In Mr. Stallworth's case, these sentencing purposes would not neglect in the least with the requested downward departure.

First, Mr. Stallworth was originally released on a recognizance bond over the Government's objection and while out, demonstrated that he could follow the rules governing the Court's directions. He does not need to be imprisoned any further than the requested downward departure to achieve the goal of incapacitation in order to protect the public from any future conduct on his part. See 18 U.S.C. §3553 (a)(2)(C). He is not a danger to the community and is not at all likely to re-offend.

In addition, this Court can be assured of his specific deterrence from future misconduct. See 18 U.S.C. §3553(a)(2)(C). Mr. Stallworth has already endured the embarrassment of being publicly charged and convicted in the midst of his law-abiding community. At this point, any sentence can be accomplished with suggested downward departure.

Furthermore, Mr. Stallworth has demonstrated that he has no need for rehabilitation or correctional treatment for substance abuse, mental health concerns, other types of addictive behaviors, or medical problems. See **18 U.S.C. § 3553 (a)(2)(D)**. In short, Mr. Stallworth does not need a penal sentence any further than previously requested to deter his specifically from future misconduct, as all these sentencing goals have been accomplished already, by his own doing.

**As for deterring others generally, a sentence of 63 months can accomplish that aim, especially in this case, where there is no need to send the message to the community that repeat offenders will be punished more harshly, since Mr. Stallworth is a Category I, and is not a repeat offender**. In general, the certainty of a conviction for a federal felony can have a significant deterrent effect on others, especially when such a conviction results in the significant loss of valuable civil rights and societal benefits such as job opportunities. The suggested downward departure would send the message to others in the community and to Mr. Stallworth that not respecting the law is a sure way to lose a portion of one's freedom to function in the society that the laws were designed to protect.

Moreover, Mr. Stallworth presents little risk of recidivism. **First, stable employment in**

**the year prior to his arrest is associated with a lower rate of recidivism. Htt://www.ussc.gov/publicat/Recidivism_General.pdf at 12. Secondly, offenders are most likely to recidivate when their sentence is straight to prison, as opposed to probation or split sentence**. Id. at 13**. Lastly, Criminal History Category I offenders are less likely to recidivate than offenders from other criminal history categories**. Id. at 6.

Thus, while the sentencing guidelines provide for a 63 to 78 months sentence in addition to any supervised release, fine and restitution the court may impose for an offender with Mr. Stallworth's calculations, the several factors under section 3553 (a), as set forth above, suggest that the suggested downward departure would be appropriate and fair punishment *for this particular defendant and this particular crime*.

Based on the sentencing factors and arguments set forth above, Mr. Stallworth respectfully requests that this Honorable Court deviate from the guidelines and impose a sentence of 63 months, as a sanction that is sufficient, but not greater than necessary, to satisfy the statutory sentencing objectives in Mr. Stallworth's case.

                                                     Respectfully submitted,

                                                     /s/ Benjamin E. Starks\
                                                   Benjamin E. Starks

Starks & Boyd, P.C.\
11528 S. Halsted\
Chicago, IL 60628\
(773) 995-7900\
Attorney No. 2706962